**SIGNED this 14th day of April, 2010.**



_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE
_____

# United States Bankruptcy Court
Western District of Texas
San Antonio Division

| In re | Bankr. Case No. |
|---|---|
| Premier General Holdings, Ltd. | 10-50606-C |
| *Debtor* | (Involuntary Petition) |

## Memorandum Decision on Debtor's Motion to Dismiss Involuntary Petition

Came on for hearing the foregoing involuntary petition. The debtor moves to dismiss the petition, on grounds that it has since filed a voluntary chapter 11 petition. The petitioning creditors object. The court denies the motion to dismiss, but grants relief under chapter 11 rather than chapter 7, and consolidates this case with the voluntary petition (10-51005).

### Background

This case involves a rather nasty business divorce, involving an enterprise that drills for water, then sells the water rights to water districts. Three individuals created legal entities which in turn formed a limited partnership, Water Drilling Exploration Co.,

LLP (WECO). The three individuals were also joint owners of WAD, Inc., the general partner of WECO. One of the three individuals, Dean Davenport, along with his "legal entity," Dillon Water Resources, LP, brought a lawsuit against the other two individuals and their legal entities in state court, contending that the other two were fraudulently forcing him out. The defendants were Mark Wynne and his legal entity, Premier General Holdings, Ltd. (this debtor), and James Allen and his legal entity, J. Allen Family Partners, Ltd. After a jury trial, a verdict was returned against the defendants, awarding judgment for conspiracy, fraud, and other claims, in the amount of $59,934,033.34.

After trial, there were a series of motions seeking to reverse the judgment, or to stay its entry. Meanwhile, Davenport and Dillon settled with Allen and his limited partnership, leaving only Wynne and Premier. The settlement allowed Davenport to obtain control over WECO. According to Davenport, Wynne had been using WECO to pay for his attorneys' fees in the state court litigation. Davenport got the state court to appoint a receiver for WECO. The receiver, Randolph N. Osherow, is currently in possession of the funds of that entity (which is still operating).

Then Davenport and Dillon brought an involuntary petition against Premier. *See* Premier General Holdings, Ltd., Bankr. Case No. 09-52657-C. The petition was dismissed after trial, based solely on the court's conclusion that the petitioning creditors did not yet have a claim that was not in *bona fide* dispute. Because of a legal technicality, their judgment against Premier was not yet "final" and thus beyond dispute. The court expressly found that, but for that technicality, the petition was in all other respects sustainable. A later motion for fees and damages under section 303(i) was settled after hearing and before a ruling.

The machinations in state court proceeded. At a point when the judgment of Dillon and Davenport against Wynne and Premier became final, Dillon and Davenport filed a *new* involuntary petition, seeking to place Premier into a chapter 7 case. The new petition was filed February 19, 2010, bearing case number 10-50606. On March 17, 2010, Premier filed its own voluntary petition under *chapter 11*, bearing case number 10-51005-C. It then filed a response to the involuntary petition, claiming that it should be dismissed because the filing of the voluntary petition rendered relief in the involuntary action essentially moot. The petitioning creditors counter that Premier is a bad actor, as confirmed by the now final verdict of the state court jury, and should not be permitted to be a debtor in possession (there is a fear that Premier will demand that Osherow turn over to the Premier estate the funds he is currently holding as receiver for WECO). They also note that there is 26 days' difference between the filing dates of the two cases, and the dismissal of the first filed involuntary would move the look back date, for purposes of chapter 5 avoidance actions, forward by that number of days, such that some transfers might no longer be avoidable. The petitioning creditors insist that the court enter an order for relief in this case.

**Analysis**

Involuntary petitions can pose difficult procedural problems. They are neither adversary proceedings nor contested matters as such, resulting in the oddity that some, but not all, of the Part VII rules apply to the disposition of involuntary petitions. *See* Fed.R.Bankr.P. 1018; *see also* Advisory Committee Note (1983), *reprinted in* Norton Bankr. L. & Pract. 3d, Norton Bankruptcy Rules (pamphl. ed.), at 16 (Thomson West 2009-2010). Counterclaims are not permitted, *see* Fed.R.Bankr.P. 1011(d), yet the

debtor is entitled to seek damages in the event the petitioning creditors lose. *See* 11 U.S.C. §303(i). If the petitioning creditors *do* lose, the court enters an order *dismissing* the case, yet relief under section 303(i) does not even mature until such time as the debtor wins, creating the odd anomaly of a court hearing a matter in a case that has already been dismissed.

Another difficult issue with which some courts have wrestled involves the issue presented here. What should a court do with an involuntary petition when a later voluntary petition is filed? Should the first case be dismissed, losing the earlier case filing date? Should an order for relief be entered in the first case and the second case dismissed? If so, under which chapter should the remaining case be pending? And what is the impact of consolidating the two cases under Rule 1015?

There are only a few published decisions that grapple directly with these issues. One is a district court case from the Eastern District of Pennsylvania, *In re Descorp, Inc.*, 1992 U.S. Lexis 1835 (E.D.Pa. 1992). There, an involuntary chapter 7 petition was filed, followed shortly by a voluntary chapter 11 petition. The bankruptcy court first stayed the voluntary case, then later vacated that stay, and dismissed the involuntary petition as moot. After the appeal, the chapter 11 was converted to chapter 7, and the debtor voluntarily agreed to use the date of the dismissed involuntary as the filing date for the converted voluntary case.

On appeal, the petitioning creditors claimed prejudice, noting that they had lost the earlier commencement date as a result of the dismissal of the involuntary. The district court said that this issue was rendered moot by the debtor's agreeing to use the

4

earlier date as the date of filing.[1] It then went on, however, to rule that the dismissal of the involuntary case was otherwise proper in any event. The court offered that the petitioning creditors were not prejudiced by the bankruptcy court's action because they had been given an opportunity at the dismissal hearing to show prejudice, such as the loss of an avoidance action, as a result of the filing of the involuntary. The district court believed that the petitioning creditors needed to show that they knew of the existence of actual transfers that might be subject to avoidance and which would also be lost if the later filing date were used, and cited to an Act case from 1927, *In re Anderson Motor Co.*, 18 F.2d 1001 (N.D.Tex. 1927), for support. The *Descorp* court noted that the petitioning creditors in its case had not offered any evidence to that effect.[2]

The *Descorp* court acknowledged that Rule 1015 permits the consolidation of two cases both involving the same debtor, *see* Fed.R.Bankr.P. 1015(a), but ruled, in effect, that a rule which permits consolidation does not *require* consolidation -- the first case can also be simply dismissed, furthering the interests of avoiding unnecessary costs

---

[1] The district court was wrong on this point, as the debtors' stipulation could not be binding on third parties who might be the target of avoidance actions. Those parties could rightfully claim that simple due process prevents the debtor's unilateral alteration of the "date of commencement" by stipulation when the parties defending an avoidance did not so stipulate. Those parties could thus rightfully maintain that the date of the commencement of the case, for purposes of measuring look back periods in sections 547 and 548, for example, would have to be the actual date of commencement of the voluntary case, not the "stipulated date" asserted by any trustee bringing the avoidance action. The district court did not apparently anticipate this wrinkle, and does not further discuss the question in its opinion.

[2] The district court also suggested that the bankruptcy court's dismissal based on mootness meant that the petitioning creditors would always be free to raise the issue of newly discovered potential causes of action that would be lost as a result of the dismissal of the earlier filed involuntary by proper pleadings if they later discovered such actions. *Id.*, at *7. To do so, the petitioning creditors would have to file a motion under Rule 60(b). If the motion were granted, the court would then have to enter an order for relief in that case (presumably uncontested by the debtor, who would already be dispossessed of its property by virtue of the later voluntary filing). The two cases would then be consolidated under Rule 1015, with the earlier case filing controlling the date of commencement. Any gap creditors would then have to be factored into the trustee's distribution. The court in *Descorp* does not think through whether the trustee in the later filed case would have standing to seek reconsideration of the dismissal of the earlier filed involuntary, on grounds of having discovered transfers avoidable only if the earlier commencement date were available.

5

and delays, as contemplated by subsection (c) of Rule 1015, *provided no rights are prejudiced*. *Id.*, at *9.

Two earlier bankruptcy court decisions took a slightly different approach. In the first case, *In re Lamb*, two bankruptcy cases were filed in two different districts. *In re Lamb*, 40 B.R. 689 (Bankr. E.D.Tenn. 1984). The first was an involuntary case, filed in Tennessee. The second was a voluntary petition, filed in Kentucky. The debtor wanted the Kentucky court to decide the venue question, and mounted several arguments before the Tennessee court, one of which was that an order for relief could never be entered in the involuntary case once a voluntary petition was filed, because the voluntary petition *constitutes* an order for relief, and it was "entered" before the court adjudicated the involuntary petition. Judge Kelley had this to say in response:

> This argument ignores the more serious problems that will result if the voluntary case proceeds and an order for relief is entered on the earlier involuntary petition. The involuntary case will be the first case and should take precedence. The rights of the trustee in the involuntary case generally will accrue at the time of filing of the involuntary petition. He may be able to require the trustee and other parties in the voluntary case to undo what they have done. The proper procedure is to ask the court where the involuntary petition was filed to let the voluntary case proceed but in such a way that the rights of the petitioning creditors will be protected. There is always the possibility that creditors will rush to the courthouse with an unfounded involuntary petition in order to cut off the expected filing of a voluntary petition, but the court where the involuntary petition is filed can consider this fact in ruling on a motion under Rule 1014 (b) or in deciding whether to allow the voluntary case to proceed.

*Id.*, at 691.³ Judge Kelley also noted that the filing of a voluntary case is *not* a sufficient defense to an involuntary petition. *Id.,* at 693.

The second case, *In re Westover Hills Ltd.*, involved an involuntary petition against a partnership, filed by a partner, followed by a voluntary petition filed by the partnership, through its general partner, just a few hours later. The two filings resulted from the general partner's uncertainty about his authority to file. *In re Westover Hills Ltd.,* 46 B.R. 300 (Bankr. D.Wyo. 1985). The court there concluded that, because the two cases were separated only by hours rather than days, no rights of creditors could be affected. The court then dismissed the involuntary case without entering an order for relief in that case.

The idea that creditors ought to have show prejudice in order to prevent the dismissal of an involuntary case once the debtor files a voluntary petition has its antecedents in pre-Code law. *See In re Anderson Motor Co.*, 18 F.2d 1001 (N.D.Tex. 1927). In that case, an involuntary was commenced by creditors against two persons, Kelso and Anderson, doing business as "Anderson Motor Company," seeking an adjudication of bankruptcy for both. Anderson then filed a voluntary petition for the partnership and himself, praying adjudication as a bankrupt both for the entity and for both the partners. Anderson was immediately adjudicated a bankrupt, though Kelso put up a fight. The petitioning creditors sought consolidation of the involuntary case against the partners with the voluntary case filed by the partnership. It was in that context that

---

³ Judge Kelley did not discuss Rule 1015(a), which is expressly designed to permit the consolidation of two cases both involving the same debtor. If two cases are pending in different districts, the court with the first filed case would properly decide the venue question. *See* Fed.R.Bankr.P. 1014(b). The court with the later filed case is expected to stay its proceedings until the court with the first filed case determines venue. Once venue is decided, the court with the case in the wrong venue would transfer the case to the court with the properly venued case, after which the latter court could then consolidate the two cases. This mechanism largely resolves some of the concerns expressed by Judge Kelley.

7

the court next observed that "unless some question of the preservation of a right under the earlier filing of an involuntary petition arises, there should be an adjudication upon the subsequent voluntary petition." *Id.*, at 1001 (citing cases). The court, in other words, did not have a set of facts that would satisfy the issue of preservation of rights before it because the involuntary petition did not involve the same entity as did the voluntary petition. The court did go on to observe

> Practical considerations appeal to the courts. There is really no reason for going to the expense, trouble, and time for a trial upon an involuntary application, after a voluntary petition shall have appeared. Ordinarily the creditors are interested in having a quick adjudication. It is only where, by reason of the time that may have elapsed between the filing of the two that the trustee may be unable to recover property or avoid preferences, the court would stay or suspend a voluntary petition, in order that the voluntary proceedings [sic: should be 'involuntary'] might go forward. There is no suggestion of any such necessity here. There appears to be no reason for the consolidation of the two, even if that could be done ...

*Id.*, at 1002.

The court's statement about a "general rule" favoring adjudication of the voluntary case over the involuntary case, then, grew from its concern about cost and delay, issues that were much more compelling under pre-Code law. Under the Act, to prove up an involuntary petition, petitioning creditors had to prove up certain "acts of bankruptcy." *See* 1 Collier on Bankruptcy, 14th ed., ¶ 3.03 (Matthew Bender 1974).[4] Voluntary petitions, by contrast, did not require such a showing. *Id.* The acts of

---

[4] An act of bankruptcy consisted of (1) concealment of property with intent to hinder, delay or defraud creditors (similar to current section 727(a)(2)), (2) making a preferential transfer as defined under the Act (similar to current section 547(b)), (3) allowing a creditor to obtain a judgment lien while insolvent (and not discharging the lien in 30 days), (4) making an assignment for the benefit of creditors, (5) allowing the appointment of a receiver while insolvent, or (6) admitting in writing an inability to pay debts and being willing to be adjudged a bankrupt. Bankruptcy Act, § 3(a), *codified at* 11 U.S.C. § 21(a) (repealed), *reprinted in* 1 Collier on Bankruptcy, 14th Ed., at p. 391 (Matthew Bender 1974). A putative debtor enjoyed a right to a jury trial on an involuntary petition.*See In re Rodgers-Meyers Furniture Co.*, 46 F.2d 121, 122 (N.D.Tex. 1931). Needless to say, the trial of these issues, especially with a jury, could be both lengthy and expensive.

8

bankruptcy were fact-intensive and difficult of proof. The trial of such an action could require extensive discovery, and the debtor had a right to a jury. The adjudication process could thus stretch on for many months, severely hampering the debtor's ability to continue to function (if it was a business operation). Thus, the court's concerns expressed in *Anderson Motor Co.* was more than justified. Little wonder that courts were loath to force the debtor through the time and expense of a trial over "acts of bankruptcy" when the debtor opted to file a voluntary petition, in effect giving the creditors want they want.

Another court (also in the Northern District of Texas) deciding another involuntary petition issue under the Act had this to say on the subject:

> Many questions of practice are confided to the sound judicial discretion of the trial court. The cold command of the statute is that either an adjudication or a dismissal shall take place forthwith upon a voluntary application. The right of the alleged bankrupt to contest allegations that are made as to insolvency and as to alleged preferential and fraudulent acts, and to make such contests before a jury, must and does, of necessity, require time. A debtor preferring creditors and otherwise breaching the provisions of the bankruptcy law for the equality of creditors could defeat the recovery of preferences by asserting his rights to have his cause heard before a jury, and, after the expiration of the requisite four months, file a voluntary petition. Such a proceeding would not be for the best interests of the estate. It would favor the very thing that the bankrupt act was formulated to prevent.
>
> When an involuntary petition is pending, and a voluntary petition follows, an adjudication should be had upon the voluntary, provided no injury will be done the estate, and provided the best interests thereof are vouchsafed.
>
> The voluntary petition constitutes an admission "in writing [if the bankrupt's] inability to pay his debts and his willingness to be adjudged a bankrupt on that ground, but it does not admit insolvency, unless the schedules so show, nor does it admit any preferential or fraudulent conduct such as it usually alleged in involuntary applications.

*In re Rodgers-Meyers Furniture Co.*, 46 F.2d 121, 122 (N.D.Tex. 1931).

The district court's observations in *Rodgers-Meyers* bear close examination, because of what they teach us about current practice under the Code. The concerns about delay in the adjudication of involuntary cases are still echoed in the Code, as well as in the Rules, that is clear. *See supra*. But the situation under the Code is entirely different, because the nature and the extent of the delay under the Code is so dramatically less. No longer must petitioning creditors establish "acts of bankruptcy" involving extensive discovery, proof of fraudulent intentions, and the like. And no longer does the debtor have the right to a jury trial on the involuntary petition. The petitioning creditors under the Code need only establish their own eligibility under section 303(b), and that the debtor is not generally paying its debts as they become due. *See* 11 U.S.C. § 303(b), (h)(1). They present their case not to a jury but to the bankruptcy court. *See* 28 U.S.C. § 1411(b) (court may order the issues arising under section 303 to be tried without a jury). Thus, the reluctance found in Act cases to proceed with adjudication of an involuntary petition is out of place when involuntary petitions are presented under the Code. When one appreciates the context in which the pre-Code courts expressed their preference for dismissal of involuntary petitions once voluntary petitions are filed, one can quickly see that quoting those reservations in the Code context is, well, out of context.

Indeed, if anything, the Code presents an affirmative opportunity for tactical behavior on the part of the debtor not as readily available to debtors under the Act. Under the Code, a debtor who files a voluntary petition does not have to "prove" it is entitled to bankruptcy relief. There is no judicial "adjudication" as there had to be under the Act. The filing of a voluntary petition *constitutes* an order for relief (*i.e.*, an

adjudication). *See* 11 U.S.C. § 301. That means that the debtor can elect to "time" its voluntary petition to maximize the sheltering of pre-petition transfers. By the same token, however, the filing of a voluntary petition, while not necessarily proving that the debtor is unable to pay debts as they become due, is certainly some evidence of that fact. Thus, a court could, like the court in *Rodgers-Meyers Furniture*, construe the voluntary petition as the functional equivalent of an admission that relief is warranted with respect to the involuntary petition. *See id.*

The district court in *Descorp* quoted at length from *Anderson Motors* in reaching its conclusion that the involuntary petition should be dismissed, in favor of the voluntary filing, absent an affirmative showing of prejudice by the petitioning creditors. Now we see that the court's citation was taken woefully out of context, failing to take into account the very different (and onerous) procedures that were in place in the 1920's and 1930's for handling involuntary petitions. *Descorp*'s observations carry considerably less force as a consequence. The reality is that there is much *less* reason today to accede to the filing date voluntarily selected by a debtor over the filing debt selected by that debtor's creditors. The debtor has every reason to time its filing to shelter vulnerable transfers, and the ability to file a petition that constitutes an order for relief without the necessity of an adjudication makes it that much easier to pursue that strategy. Petitioning creditors, meanwhile, often file either to prevent a potential transfer or to preserve the ability to recover transfers in the past. Unsecured creditors often have the least information about

what's really going on with the debtor.[5] They often cannot know with any certainty whether there even have been any wrongful transfers, much less whether they are trapped by the filing date selected. They are thus often the least able to demonstrate prejudice resulting from the dismissal of the involuntary petition. Finally, nothing in the Code itself even suggests that creditors must show prejudice, along the lines suggested in *Descorp*, to prevent dismissal of an involuntary petition upon the filing of a voluntary petition.

Given that the observations in *Descorp* were drawn from Act jurisprudence and its very different context, and given that those observations have the potential for inviting strategic behavior by debtors, the facile conclusion that the filing of a voluntary petition ought in the usual case to result in the dismissal of the involuntary petition is one that this court rejects.

The fact that Rule 1015(a) contemplates the consolidation of two cases involving the same debtor lends support to a different rule -- that the filing of a voluntary petition while an involuntary petition is pending ought to be treated as the functional equivalent of an admission by the debtor that an order for relief should be entered in the involuntary case, with the two matters then being consolidated under the first filed case, thereby maximizing the look-back period for purposes of chapter 5 avoidance actions,

---

[5] *See* Lynn G. LoPucki, *The Death of Liability*, 106 Yale L.J. 1, 43-44 (1996). Professor LoPucki describes a system whereby an enterprise can be rendered "judgment proof" with regard to certain kinds of creditors (especially involuntary creditors such as tort victims) through a system of financing involving a combination of asset securitization and secured loans. He observes that "To justify the change in method of financing, the savings from the elimination of liability must exceed the additional costs, if any,of the new forms of financing and occasional bankruptcy reorganizations. For many businesses, judgment proofing is not cost effective for the simple reason that the businesses generate little liability and thus have only low costs to eliminate." *Id.* The force of this observation is especially great on the facts of this case, where a debtor is being pursued by an involuntary creditor (a victim of wrongful conduct, according to a state court jury).

and minimizing the possibility of wrongful transactions between the filing of the two cases.[6] That is the rule adopted here by this decision -- the filing of a voluntary petition while an involuntary petition is pending will result (in the usual case) in the entry of an order for relief in the involuntary case, and the consolidation of both cases pursuant to Rule 1015(a) under the first filed case number (again, in the usual case).[7]

This is not to say, however, that the chapter choice made by the petitioning creditors should control. True enough, the debtor might not have filed a voluntary petition when it did but for the filing of the involuntary case. But the Code *does* make the filing of a voluntary petition easy -- and affords the debtor the absolute right to select the chapter under which it files. *See* 11 U.S.C. § 301. There is no court hearing to determine whether the debtor "qualifies" for bankruptcy, as there was under the Act, nor is there a court hearing to determine under which chapter the debtor should be permitted to proceed. *See generally* H.R.Rep. No. 595, 95th Cong, 1st Sess 321 (1977). What is more, even if an order for relief is entered on a petitioning creditor's involuntary chapter 7 petition, the debtor has a near unbridled right to convert the case to chapter 11. *See* 11 U.S.C. § 706(a) ("the debtor may convert a case under this chapter to a case under

---

[6] If a transfer occurs after the involuntary case is filed, but before the voluntary petition is filed, and the involuntary case is later dismissed, then any transfers in the intervening period would be vulnerable to avoidance only under sections 547 or 548, with all the attendant prerequisites that must be satisfied in those sections. By contrast, if the involuntary is not dismissed, but an order for relief is entered instead, then transfers in the intervening period will be subject to avoidance under section 549, at least to the extent that a given transfer exceeds the value given the debtor in exchange. *See* 11 U.S.C. § 549(a), (b). Thus, a rule of consolidation also discourages opportunistic transfers in the gap period.

[7] The *caveat* is that there may well be the case that arises in which, because of the unique facts of the case, an order for relief should *not* be entered in the first case. It is difficult to imagine what those facts might be, frankly, but a debtor ought to be able to argue, at the very least, for a dismissal of the involuntary case, on a showing of cause, thereby assuring that the filing date for the second-filed case will control. The concerns of court decisions under the Act about findings made in the adjudication of an involuntary case are inapposite, because it is no longer necessary to establish "acts of bankruptcy" to obtain an order for relief in an involuntary case under the Code. Still, there might be other unique factual scenarios that might warrant a dismissal of the earlier filed case. Thus, the *caveat*.

13

chapter 11 ... at any time"); H.R. Rep. No. 595, 95th Cong, 1st Sess 390 (1977) (saying that the debtor has a one-time absolute right of conversion of a liquidation case to a reorganization case). The House Report observes that "the policy of the provision is that the debtor should always be given the opportunity to repay his debts ..." *Id.* Not surprisingly, the Rules contemplate that, while a conversion under section 706 is accomplished by motion, it is not a contested matter, and a court may rule on the motion without a hearing. *See* Fed.R.Bankr.P. 1017(f)(2); *see also* Advisory Committee Note (1987), *reprinted in* Norton Bankr. L. & Pract. 3d, Federal Rules of Bankruptcy Procedure, pamphl. ed. at 71 (Thomson-West 2009-2010) ("no hearing is required on these motions unless the court directs").

The debtor's choice of chapter thus ought to be honored, even if that choice is expressed as a voluntary petition filed after petitioning creditors have filed an involuntary petition. *See, e.g. Matter of Omaha Midwest Wholesale Distributors, Inc.*, 94 B.R. 160, 162 (Bankr. D.Neb. 1988). Section 706(a) permits the debtor to convert "a case under this chapter" without reference to whether an order for relief has been entered. What is more, the filing of an involuntary petition commences a case. *See* 11 U.S.C. § 303(b). Thus, there is little practical reason to deny a debtor, the subject of an involuntary, the preference it has expressed for a given chapter, whether by the filing of a motion to convert (triggering what the legislative history to the Code describes as "an absolute right") or by the filing of a voluntary petition under a given chapter in the face of an involuntary. There is every reason, to the contrary, to honor that choice, given the intentions of Congress expressed in both the structure of the Code and in the legislative history to the Code.

The petitioning creditors here maintain that *their* choice of chapter should be honored, given that it is the petitioning creditors that are forcing the issue with a filing. The court is not insensitive to those concerns. However, the interests of creditors yield to the interests of the debtor when it comes to the choice of chapter under which the case is initiated, at least as an initial matter. Creditors are given ample opportunity to demonstrate that a given debtor should not enjoy the benefits of a given chapter by filing motions either to convert the case or to appoint a trustee in the case. Both such motions, however, require a showing of cause. *See* 11 U.S.C. § 1112(b), 1104(a). Thus, we do not presume that the creditor's choice of chapter is honored, and require the debtor to prove differently. Quite the contrary. The Code gives the debtor the ability to file voluntarily, and to choose under which chapter the debtor wishes to proceed, without court intervention. The Code gives the debtor the one-time right to convert a case to a different chapter, once again with virtually no judicial intervention.[8] By contrast, the Code gives creditors the ability to seek conversion to another chapter, but the burden is clearly placed on the creditors. These clearly expressed preferences should be honored in the context of involuntary petitions as well.

Thus, as did the court in *Omaha Midwest Wholesale Distributors*, this court will honor the debtor's choice of chapter as expressed by its having filed a voluntary petition under chapter 11, and will not further require the debtor to take the additional step of filing a motion to convert the involuntary petition to chapter 11. *See Omaha Midwest*

---

[8] Once again, the *caveat* is made because the Bankruptcy Rules do provide that the conversion from chapter 7 to chapter 11 (and from chapter 11 to chapter 7) is done via motion, not mere notice. *See* Fed.R.Bankr.P. 1017(f)(2). The Advisory Committee Note, cited *supra*, also notes that the court *may* at its discretion direct a hearing on a motion to convert. Finally, the Supreme Court has indicated that a court might intervene in a debtor's decision to convert a chapter 7 case to chapter 13, despite the apparent "absolute right" to so convert. *In re Marrama*, 549 U.S. 365 (2007). There is little reason to confine the Court's ruling in *Marrama* to the chapter 13 context.

*Wholesale Distributors, Inc.*, 94 B.R., at 163. As both cases involve the same debtor, consolidation under Rule 1015(a) does not significantly or adversely affect the interests of creditors.[9]

### Conclusion

The analysis laid out here is designed to address a conundrum that has faced the courts for nearly as long as the Code has been in place -- how to accommodate both the debtor's choice of chapter and the petitioning creditors' choice of timing when an involuntary petition is followed by a voluntary petition under a different chapter. For the reasons stated in this decision, the court concludes that the proper procedure to employ is as follows:

*1.* Treat the filing of the voluntary petition as the functional equivalent of a motion to convert the involuntary case to a voluntary case under the chapter selected by the debtor.
*2.* Consolidate the two cases into a single case, with the first filed case (and case number) controlling.
*3.* Afford the debtor the opportunity, on motion and an opportunity for a hearing, to seek the dismissal of the involuntary petition for cause, with the burden of proof placed on the debtor.

The parties will submit an order consistent with this decision.

### # # #

---

[9] That is to say, joint administration of two cases that involve the same debtor does not pose the same risk as does joint administration of two cases involving different debtors. In the latter case, a court must be careful not to effectuate a substantive consolidation of the two cases, which would or could affect the rights of creditors of the respective debtors. *See In re Owens Corning*, 419 F.3d 195 (3rd Cir. 2005). In the former, the two estates are essentially the same, differing only to the extent that changes in property interests or creditor makeup might have occurred in the gap period between the filing of the two cases.